Good morning, may it please the Court. My name is Susan Hill and I represent the petitioners in this matter, Mr. Bernardo Gonzalez and his family. Your Honors, today we're given a starting point, the fact that Mr. Gonzalez, the presumption that he will be persecuted if he returns to Guatemala and that he would be persecuted on account of his political opinion. What's that presumption? The presumption is, it's a rebuttable presumption of future persecution. Yeah, for past persecution, that he'll be persecuted if he returns, but you went an extra step and said that he'll be persecuted on account of his political opinion. The presumption goes that far? I'm not saying it does, Your Honor, perhaps I misspoke, but in this case we are asserting that he would be persecuted for his political opinion. If you add to that the facts that, A, Mr. Gonzalez testified that his persecutors were seeking him out as recently as eight months prior to his hearing in front of the immigration judge, and, B, the fact that he intends to remain politically active in Guatemala. Now, the INS has bought this presumption and they must do so by a preponderance of the evidence. In this case, they did not meet their burden. That is because their evidence did not specifically address the facts in Mr. Gonzalez's case, most notably that his persecutors were still seeking him out and that he intended to remain politically active. So if we accept your argument, then we should declare as a matter of law that country reports are no longer adequate proof because none of them are tailored to the situation of any individual alien. Is that a logical extension of your argument, Counsel? It could be, Your Honor. So far in the cases, it appears that when the issue has been addressed, the country reports are often very general. Would we run into some problems with the Supreme Court if we went that far, Counsel? I'm not asking for a blanket assertion, Your Honor, but in this case it is. I don't know where you stop if we accept the argument that you're pressing. That has to be the conclusion. But my argument in this case, Your Honor, is that this general country report did not address the facts because the ---- But no country report does. It could. That's the problem. But sometimes in some instances it could. I can't think off the top of my head of some instances where it may occur. But in these particular ---- I mean, a country report would be prepared with one individual in mind and written in that connection. And it seems to me that all you have to do is take the country report, take a look at the individual's circumstances, and in the light of the country report, then render an individualized decision, which is exactly what the BIA did. Now, you may disagree with it, but it seems that the BIA said the Ninth Circuit requires an individualized basis. We got a country report. We got the facts on this guy. We put them together, and here's what our conclusion is. Isn't that perfectly appropriate as a process? Well, the only evidence in front of the BIA, Your Honors, was the country report. The INS does have the option to introduce more particularized evidence, and in this case they did not. And in most cases they do not. They only submit the country report. The country report says that even though some violence may still exist, only party leaders or high-profile acts generally are vulnerable. And they took a look at this and they said, well, here's a gentleman who was only one day or something like that involved as a political activist. And so we conclude from the country report, given this person's situation, that he simply doesn't have anything to worry about. But that wasn't the facts, Your Honor. I disagree respectfully. In fact, he was involved for about three months in his political party. He served one day as the election overseer, and then he also intended to be elected to a higher office. He stated that he intended to return to political life in Guatemala. But the incident, as I understand it, that triggered the claim of persecution had to do with his one-day assignment as a poll watcher, correct? Yes. Yes, it did. And apparently he caught the opposition party stuffing the ballot boxes and they hit him with the butt of a gun or something? Correct. Okay. So what other evidence do you have beside that one incident that would lead to a conclusion that he was being persecuted because of his political beliefs? I'm sorry, Your Honor, to interrupt. Did you hear all the questions? Yes, I did. The additional evidence was that the political party, the opposition, was seeking him out. They were specifically looking for him by name and they were asking for his address. Additionally, in this case, he does state that he will remain politically active. And if he goes back, we are looking at the future persecution. The BIA has already determined that he was persecuted in the past. Well, if he remains politically active, though, doesn't the country report suggest that everything is so changed that you simply can't say I'm going to be politically active, therefore I'm going to get in trouble with the same people? I mean, it's not even clear that the same people exist as a group anymore. Right. But that, in essence, that is the problem here, is that in some part the BIA did engage in speculation. We aren't sure exactly to the extent he will be involved. No one can predict the future. And the test here is whether it's the illness's burden to show that he will not be harmed. Now, it's a low chance or that maybe he will be harmed, maybe he won't. It's that he will be safe. Will he remain safe in Guatemala? And given the evidence. Let me follow that up a little bit. Reading the BIA statement or whatever it is, they first rely on the country report. And then getting over to page three, the first full paragraph, they talk about given the past persecution suffered by the respondent, or given that the past persecution, number one, occurred over a decade ago, now they're giving reasons in addition to the country report, and that the political party that he feared may no longer exist, we agree that the service met the burden demonstrating on an individualized basis. Now, I think what you're saying is it's the INS's burden to dispel the presumption. The country, you can't rely on the 1997 country report by itself. The only additional things shown were that the event occurred over a decade ago, and you say the speculation that the party may no longer exist. What if all we had were that it occurred over ten years ago? Would that be enough on an individualized basis? And no other facts? Well, the country report, you can consider the country report, and then the individualized circumstance. I think that's probably what the law is. And here they did, but the individualized circumstance, I think you would argue, were not sufficient circumstances, even in conjunction with the country report, to dispel the presumption. If I'm following you, yes, Your Honor. But, you know, we just have to say, does it compel a different conclusion to say, well, we look at the country report that says that generally things are kind of hunky-dory, although there are some problems that exist, and here they say we've got a case where it was more than a decade ago that this occurred. Does this then compel a conclusion that the presumption was not rebutted? Yes, it does, Your Honor, because, first of all, the fact that the ten years have passed, part of that ten years was wrapped up in the BIA appeal, and this compelled that we should not use the appeal time and construe it against an alien in these circumstances as far as passage of time and showing that there is no danger. During the ten years the enemy died, I mean, the fact that whose fault it was doesn't matter. Ten years has still passed. Well, again, this Court has held that that's engaging in speculation. I believe it was in Salazar-Pakar, if I pronounced that correctly. This Court said that that would be engaging in speculation. And additionally, the fact that there is no evidence in the general report on these particular political parties is more of a void of evidence rather than the existence of evidence. Well, isn't there a reference in the country report to the fact that there have been many elections during the peaceful times and that power has been in transition without any trouble after each of these elections? So that seems to suggest that all this fighting between the parties has calmed down and gone away. It does say that, but it also does say that members of political parties, just plain members, not even high leaders, but members complain of threats and violence against them from opposition parties. Well, but it talks pretty much about high-level people, though, doesn't it? Actually, no. There's two sections. One talks about high-level, Your Honor, and another section talks about just plain members. That's in the very vaguest of terms. What's the evidence that you have in the record that supports the proposition that very recently he's still been subjected to threats? Well, the evidentiary record stopped at the time of the immigration judge's hearing, and eight months prior to that, he was still being sought out by the political opposition. How do we know that? His credible testimony he specifically found, Your Honor. Well, what did he say, and what was the exact evidence on that, that he's still being sought out? He had reports from family members that said that they are looking for him, and while I know that there was some discussion prior to coming here as to whether they were rumors, et cetera, however, the factual record is not entirely clear, but he did clearly state that he was being sought after by the political opposition. You may be overselling that, and since you've been in the United States, have any members of the opposing party asked where you've been? Yes, my sister about eight months ago. It was eight months ago that they asked, and what did your sister tell you? She heard, so already you're dealing on multiple levels of hearsay here. She heard that since the town is small where I used to live that there are rumors that they're always asking about me. So you're talking about multiple levels of hearsay with respect to rumors. That doesn't really compel anything, does it, in terms of concluding that your client faces a threat of trouble because they're still looking for him? I believe it does, Your Honor, and forgive me, but it's- Your sister has heard that there are rumors? Yeah, it's engaging in a bit of semantics as well. Number one, hearsay is allowed in asylum proceedings just because it's very difficult to get the evidence, and number two, perhaps it was the interpreter's choice. It may just be semantics as far as- One minute you're telling us we can't speculate. Now you're telling us perhaps it was the interpreter's choice. The black letter record says she's heard that there are rumors. Forgive me, Your Honor, if I gave the wrong impression. I'm not asking for speculation. I'm just saying that I think we're arguing over semantics as far as the words that were used. The heart of the matter is that people have said that the political opposition are looking for him. Where does it say that? When it says my sister told me that she has heard rumors from others in the town. All right. Do you have anything else? No, Your Honor. Thank you. Good morning. May it please the Court, my name is Jamie Dowd on behalf of the respondent, John Ashcroft. Opposing counsel correctly stated the issue whether or not the INS did rebut the presumption here that the petitioner had a well-founded fear of future persecution in Guatemala. Yeah, yeah. What about these country reports now? If we had a country report, the 1997 report, suppose you have a report that says that the only people being persecuted at this time are people over seven feet tall. And then you get the facts of your case and the petitioner is five foot eight. And that evidence goes in. And the only thing that the BIA relies upon is the country report. Has there been an individualized determination in that situation? Yes, Your Honor. Well, this court requires that there be an evaluation on the particular grounds that the petitioner alleges. The petitioner here alleges that because he was a poll watcher and a member of a political party, he will be persecuted if he returns. Now, the country report indicates that, one, only party leaders or high-profile activists are even subject to harassment. So would that by itself be enough of an individualized application of the country report for this case? Yes, Your Honor. It would. The record clearly indicates that party leaders or high-profile activists would be possibly subject to harassment or any other type of, not necessarily even persecution, just harassment or some type of violent activity. I would submit that the petitioner here was not even a party leader. He was involved in it for three months, and he held a poll watcher position for one day in the party. He never said he was a leader. He specifically testified that he held no other leadership position in the party, the record at 115. So even to go so far as to say he was a party leader and he would be subject to persecution would be, I think, a big leap. Just to say that he was a party member and would possibly be subject to persecution, well, the country report clearly rebuts that information. So I would say that is enough of an individualized determination. However, the INS went farther in this case and said not only has the country conditions changed in terms of only party leaders or high-profile activists would be susceptible to harm, but the petitioner here actually did relocate to the capital city and experienced no harm for eight months that he lived there. He specifically testified that his family moved there and lived there for seven months with no problems. He also specifically testified, I believe, that there were two notes left in the two weeks after the poll watching incident and then that nothing else happened in the 18 months he was in Guatemala before he left and came to the United States. Nothing happened after the two weeks in his own home community or once he moved to the capital city. Therefore, the INS, they have two grounds that they can rebut the presumption. One, to show that country conditions have changed, or two, to show that the petitioner could relocate within his country. They did both. They showed that country conditions had changed to the extent that only party leaders or high-profile activists would be subject to persecution or harassment or violence. And the further part of that statement is only in their home communities. So therefore, the INS went so far as to say this petitioner moved to the capital city, lived there for eight months, didn't experience anything tied that happened to him, and also testified that nothing happened to him in the 18 months after the two weeks that he received notes in Guatemala. Now, Petitioner's Counsel also said that there were some reports from his sister that people were still looking for him, but she never said, if you want to rely on that information, that there were threats, that anyone threatened his life. She just said that people were, maybe rumors, that people were looking for him in Guatemala, but not that anybody was threatening him, not that anybody said they wanted to kill him or they were out to get him or anything like that. So that, I mean, even to take that statement, which the court was interested in, the basis and how foundationally accurate that was and things like that, even to say, okay, this is good information, but there were no threats in any of that information. He never testified that anyone was threatening him. So I think it's, I mean, it's a big leap to say, well, we can say because eight months before his hearing, someone maybe was looking for him and there were rumors that people were looking for him, is a big leap to say people were threatening him and still looking for him and hopefully, you know. Do you think they were looking for him to apologize for hitting him on the head? Well, I don't want to speculate why they might have been, if they were looking for him, why they might have been looking for him, but just the fact that maybe someone was looking for him is not enough, Your Honor. I mean, nobody was threatening him. And I mean, I would argue that threats, there at least needs to be some sort of threat to even get past. Well, if somebody had smacked you on the head with a gun because you were perceived as a political activist and you found out any number of years later that they were looking for you, how might you interpret that? Well, I don't want to speculate on that either, but I would just go back to my original statement that, I mean, there's no foundation that anyone was even looking for him. But I would say that the fact that they were looking for him does not necessarily indicate that there was any type of violent activity going on or that anyone was seeking him out to do any harm to him, plus the fact that I think, as the Court stated, there's no evidence in the record that this political party even continues to exist. So there's no evidence that… Well, there's no evidence that it doesn't exist. The report doesn't mention this party at all. That's true, Your Honor. So that's a zero, isn't it? Sure, sure. But, I mean, I think that that balances out, you know, the petitioner's statement that someone in that political party… That doesn't mean the party's gone away. There's a lot of other stuff in here that suggests there's still local rivalries that make living in certain areas for people who used to have political problems still difficult. Perhaps, Your Honor, but that would be for political leaders. And as I said before, there's no indication on this record that this petitioner is a political leader. Well, it says generally political leaders. It doesn't say only political leaders. It uses generally. True, true. But, however… So that doesn't exclude lower-level people. It doesn't exclude. However, I mean, the record, and the Supreme Court has recognized this particular country report, does indicate that there has been considerable change in Guatemala and that only party leaders or high-profile activists are susceptible to harassment. Harassment, even, it says. It doesn't say persecution. It doesn't say death or violence. It just says susceptible to harassment and only in their home communities. So where this petitioner actually did move away from his home community and lived in Guatemala itself for 18 months and in the capital city for several months before he left, there's no indication that he couldn't go back to the capital city at the very least and live there safely. Do you have anything else? I don't. You may respond. Your Honors, we're looking at the future here. Aside from the fact whether he was recently threatened or not prior to the immigration judge's hearing, the fact remains he does want to remain politically active. This court stated in Popova v. INS… Ventura. Ventura case, the Supreme Court said, with regard to the last point that Ms. Dowd made, that this latter phrase, only in their home communities, is particularly important in light of the fact that an individual who can relocate safely within his home country ordinarily cannot qualify for asylum here. So why doesn't that statement by the Supreme Court squarely apply to your client? Because, Your Honor, in this case he wishes to remain politically active and assuming… In his home community. Correct, but… But the Supreme Court is saying that's not good enough. If he can safely relocate somewhere else within his home country, he's not entitled to asylum. Then we would be requiring him to go back and test the waters as to which local communities he could or could not live in. That would be the case, but that's what the Supreme Court said. And if we deviate from that, we're going to get in trouble again with the Supreme Court. But also, again, here the report is general and it says in local communities, not just a single community. But you don't dispute the evidence that when he relocated to the capital city for eight months, there were no further acts. No, I don't, but his whereabouts were not known at that time. And over a period of time, more inquiries were made where they asked for his address. That could occur if he does go back. They have shown their intent to find him. Whether or not these last, as we got caught up in the word of the rumors from the sister, indicate someone is still out there looking for him. In his home community. We don't know if it was in his home community or not, but he did move… It is the home community if you read the testimony. I suppose that is true. He, his persecutors have been looking for him and he did move to the capital, but still did not feel safe and felt that he had to leave the country because of that. And I'm sorry, if I may just make one more point. This court did state in Popova that the INS needs to show a positive effect on the alien. And here they have not shown a positive effect as a result of the changes. Thank you. Thank you, counsel. The case just argued is ordered and submitted.
judges: Thompson, Trott, Tallman